# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

**HARLEY-DAVIDSON INC.,**

       **Plaintiff,**

      **v.**                                      **Case No. 12-C-691**

**HARTFORD ACCIDENT & INDEMNITY COMPANY;**
**THE TRAVELERS INDEMNITY COMPANY;**
**LIBERTY MUTUAL INSURANCE COMPANY;**
**AFFILIATED FM INSURANCE COMPANY;**
**NORTHBROOK INSURANCE COMPANY**
**now known as Allstate Insurance Company;**
**MANHATTAN FIRE & MARINE INSURANCE COMPANY**
**now known as Westport Insurance Company;**
**MOTOR VEHICLE CASUALTY COMPANY**
**now known as Ace Property & Casualty Insurance Company;**
**FIRST STATE INSURANCE COMPANY;**
**CERTAIN UNDERWRITERS AT LLOYD'S**
**OF LONDON subscribing to POLICY NO, 547/640388KB**
**including LLOYD'S SYNDICATES 989, 279, 618, 278, 948,**
**210, 918, 553, 175, 408, 99, 471, 661, 518 AND 346;**
**STRONGHOLD INSURANCE COMPANY LIMITED; and**
**CNA REINSURANCE OF LONDON LTD,**
**now known as CX Reinsurance Company Limited;**

      **Defendants.**

---

# DECISION AND ORDER

---

This insurance coverage case is before the Court on the Plaintiff Harley-Davidson Inc.'s ("Harley") motion to remand this matter to the Milwaukee Country Circuit Court, pursuant to 28 U.S.C. § 1447, contending that neither the amount in controversy nor complete diversity have been established for the purposes of federal

diversity jurisdiction under 28 U.S.C. § 1332. (ECF No. 63.) In opposition, Defendant Travelers Indemnity Company ("Travelers") contends that Harley's remand motion is improper and should be denied because the Court did not have the opportunity to determine whether the London Insurers should be joined, and Harley is relying on an inoperative complaint. Travelers further contends that, if addressed, joinder should be denied and the Court should retain jurisdiction over this case. No other Defendant takes a position with respect to Harley's motion

However, with leave of the Court, the Defendants Certain Underwriters at Lloyd's of London Subscribing to Policy No. 547/640388KB (the "London Policy") including Lloyd's Syndicates 989, 279, 618, 278, 948, 210, 918, 553, 175, 408, 99, 471, 661, 518, and 346 (the "Underwriters"); Stronghold Insurance Company Limited ("Stronghold"); and CNA Reinsurance of London Ltd. ("CNA London") (collectively "London Insurers") filed a reply to Travelers' response (ECF No. 77) contending that Travelers mischaracterized the follow form provision of the London Policy and that its reference to the "Defense, Settlement and Supplementary Payments" provision was unfounded and contrary to the interpretation of the policy agreed upon by the parties to the policy. The London Insurers further assert that the defense cost provisions in the underlying Lexington Insurance Company Umbrella Policy number 5003325 are not relevant to whether federal diversity jurisdiction exists over the London Insurers.

Defendant ACE Property & Casualty Insurance Company, f/k/a CIGNA Property & Casualty Insurance Company ("ACE") as successor in interest to Motor

Vehicle Casualty Company, but only as to policies issued through Cravens, Dargan & Company, Pacific Coast ("Motor Vehicle"), also responded to Travelers' response (ECF No. 72) and requests that the Court refrain from interpreting those policies. First State also responded to Travelers' response (ECF No. 76) and requests that no determinations be made regarding the First State policy.

*Procedural Background*

A brief outline of the procedural history of this action is helpful. Harley originally filed this action in the Circuit Court for Milwaukee County, Wisconsin, seeking damages based on the alleged breaches of ten Defendant domestic primary and excess insurers'[1] duty to defend and to indemnify Harley with respect to a series of asbestos-related claims against it. (*See* ECF No. 1-1.) Harley also sought declaratory judgment holding that the ten Defendants are liable for all amounts paid or to be paid by Harley for its defense, settlement, and/or judgments in connection with Harley's past, pending, and future asbestos claims for any periods of non-insurance until all other applicable primary and excess coverage has been exhausted.

In July 2012, Travelers filed a notice of removal pursuant to 28 U.S.C. § 1446, with the unanimous consent of the other nine non-removing Defendants. (ECF No. 1.) Travelers invoked the Court's subject matter jurisdiction over actions where there is

---

[1] Of the ten original Defendants, the following businesses remain as Defendants in this action: Hartford Accident & Indemnity Company; Travelers; Liberty Mutual Insurance Company; Affiliated FM Insurance Company; Northbrook Insurance Company now known as Allstate Insurance Company; Manhattan Fire & Marine Insurance Company now known as Westport Insurance Company; Motor Vehicle now known as Ace; and, First State.

complete diversity of the citizenship between the plaintiff and defendants, and the amount in controversy exceeds $75,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332. The parties entered into a series of stipulations for extensions of time to answer or file a responsive pleading that were approved by the Court. The last of those stipulations was approved by the Court on December 5, 2012, and extended the time for the Defendants to answer or otherwise plead until February 4, 2013. (ECF No. 31.)

On February 1, 2013, Harley filed an Amended Complaint adding the London Insurers as Defendants. (ECF No. 33.) Harley's Amended Complaint alleges citizenship of all the Defendants "upon information and belief." Specifically it alleges that

> [u]pon information and belief, [the Underwriters] are syndicates that underwrite insurance in an English insurance market headquartered in London, England on behalf of their various members (known as "names") around the world. Upon information and belief, all of the syndicates and names associated with [the "London Policy"] are foreign citizens.

(Am. Comp. ¶ 10.) The Amended Complaint also alleges "[u]pon information and belief, diversity of citizenship also exists between [Harley] and [Underwriters]. However, if any of the "names" associated with [the London Policy] are Wisconsin citizens, this Court will no longer have subject matter jurisdiction over this action. *See Indiana Gas Co. v. Home Ins. Co.,* 141 F.3d 314 (7th Cir. 1998)." (*Id*. at ¶ 15.).

The Underwriters answered the Amended Complaint asserting that they lacked

sufficient information to determine the citizenship of all the underwriters and names of the syndicates that compiled Harley insurance coverage for the 1989-1990 insurance policies at issue. (Ans. ¶ 10.) The Underwriters also admitted "only that they subscribed severally, each for his or its own part and not for one another, to alleged [the London Policy] listing AMF Incorporated as a Named Insured and with a policy period of June 30, 1979 to June 30, 1980." (*Id*. at ¶ 26.) (ECF No. 58.) All of the Defendants in this action filed answers to the Amended Complaint.

Harley's motion to remand followed. In support of its motion, Harley avers that its Amended Complaint is based on information it obtained during September 2012 in the context of its settlement negotiations with its insurers, disclosing for the first time that Harley's fourth-layer excess coverage for the 1979-1980 policy period had been exhausted as of about January 1, 2010. (Jeffery O. Davis ("Davis") Decl. ¶ 2.) (EFC No. 65.) In support of its reply brief, Harley further avers that when it filed the Complaint in state court, it had conflicting information about the policies presently "on the risk," or obligated, to cover asbestos-related claims filed against Harley. (Davis Decl. II ¶ 2.) (ECF No. 74.) Harley decided that, without more information, it should not allege that the fifth-layer quota share policies for the 1979-1980 period had been triggered by exhaustion of the underlying coverage. (*Id.* at ¶ 3.) One of the fifth-layer quota share policies — First State policy number 928579 — was inadvertently listed in the Complaint along with other First State policies. (*Id.*) If any parties named in Harley's Amended Complaint are not joined in this action, Harley avers that it

intends to file a separate action against those non-joined parties in another court to obtain complete relief for Harley's ongoing and future asbestos-related losses. (*Id*. at ¶ 4.)

## ANALYSIS

Had Harley sought leave to file an amended Complaint adding parties as required by the case law of this circuit, *see Ed Miniat, Inc. v. Globe Life Insurance Group, Inc.,* 805 F.2d 732, 733 (7th Cir. 1986), the analysis would have included consideration of 28 U.S.C. § 1447(e), which provides "[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court."[2] The Court has discretion under section 1447(e), and "should balance the equities" when making its determination, focusing on the following factors: "(1) the plaintiff's motive for seeking joinder, particularly whether the purpose is to defeat federal jurisdiction; (2) the timeliness of the request to amend; (3) whether the plaintiff will be significantly injured if joinder is not allowed; and (4) any other relevant equitable considerations. *Schur v. L.A. Weight Loss Centers, Inc.,* 577 F.3d 752, 759 (7th Cir. 2009).

When faced with a request to join non-diverse parties that would destroy

---

[2] *Sparrow v. Menard, Inc.*, 1:11-CV-00608-TWP, 2011 WL 4833116 (S.D. Ind. Oct. 12, 2011), faced similar circumstances and concluded that the district court had the authority to consider a post-removal joinder that implicated § 1447(e), even when the joinder was permitted without leave of court.

subject-matter jurisdiction,[3] the Court has two options under § 1447(e): it may deny the motion to join; or it may grant the motion and remand. *Id.* Additionally, "federal courts should interpret the removal statute narrowly, resolving any doubt in favor of the plaintiff's choice of forum in state court." *Schur,* 577 F.3d at 758.

The addition of the London Insurers raises the issue of the citizenship of each of the names and the amount in controversy with respect to two policies they issued. All parties involved in this suit are businesses; businesses are categorized in two different ways for diversity of citizenship purposes: corporations and non-corporations. 28 U.S.C. § 1332. Under § 1332, a corporation is deemed to be a citizen both of the state where it is incorporated and the state where it maintains its principal place of business, the latter being the state where the corporation has its headquarters or "nerve center." *See Hertz Corp. v. Friend,* 559 U.S. 77, 95 (2010). Non-corporations are considered a citizen of every state in which each of its members is a citizen. *Id.* For a limited liability company, "citizenship . . . for purposes of diversity jurisdiction is the citizenship of [each of] its members." *Cosgrove v. Bartolotta,* 150 F.3d 729, 731 (7th Cir. 1998). The citizenship of a non-corporate entity must be "traced through however many layers of partners or members there may be." *Meyerson v. Showboat Marina Casino P'ship,* 312 F.3d 318, 320 (7th Cir. 2002). Members of a limited liability

---

[3] In cases where federal jurisdiction is based on diversity of citizenship, § 1332 requires complete diversity. *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806). This means there can be no opposing party that is a citizen of the same state. *Id.* All Harley's allegations in the Amended Complaint regarding the citizenship of the Defendants are based on information and belief, and are insufficient to establish jurisdiction. *See Am.'s Best Inns, Inc. v. Best Inns of Abilene, L.P.,* 980 F.2d 1072, 1074 (7th Cir. 1992).

company may include "partnerships, corporations, and other entities that have multiple citizenships." *Hicklin Eng'g, L.C. v. Bartell,* 439 F.3d 346, 347 (7th Cir. 2006). "A federal court thus needs to know each member's citizenship, and if necessary each member's members' citizenships." *Id.* at 348.

Underwriters is composed of syndicates: non-corporation administrative organizations that shift the policy risk to a group of underwriters. *See Underwriters at Lloyd's, London v. Osting-Schwinn,* 613 F.3d 1079, 1083 (11th Cir. 2010). The underwriters, commonly referred to as "names" or "members," are individuals within a syndicate who financially back the insurance company and collectively determine the coverage policy and assume the risk. *Id.* Typically, with each underwritten policy, a "head" or "lead" underwriter is appointed to the policy to transact business without consulting the investors. *Ind. Gas Co. v. Home Ins. Co.,* 141 F.3d 314, 316 (7th Cir. 1998).

For determining citizenship, a syndicate, as an unincorporated entity, is considered a citizen of every state of which each of its members are citizens. *Id.* at 317. Each syndicate may have hundreds of underwriters or names. With fifteen syndicates covering the relevant insurance policy period, there may be thousands of names associated with the London Policy. Thus, unless the citizenship of each underwriter is determined to be diverse from Harley, the case cannot proceed in federal

court on the basis of diversity jurisdiction.[4]

## Harley's Motive for Joining Underwriters

The first factor is whether Harley's motive for adding Underwriters is to defeat federal jurisdiction. Even if a plaintiff's proposed claims against non-diverse defendants are viable, the Court may still consider whether the joinder request appears to be designed to defeat federal jurisdiction. *Schur,* 577 F.3d at 763-64.

Harley avers that it joined the London Insurers based on information it first obtained in September 2012 during settlement negotiations with its insurers, disclosing that its fourth-layer excess coverage for the 1979-1980 policy period had been exhausted as of about January 1, 2010. Prior to that time it had conflicting information which it felt was insufficient to serve as a basis for including the London Insurers in the action. Furthermore, Travelers does not contend that Harley's claims against those new entities lack a reasonable basis in law or fact. Harley's claim against Underwriters is plausible. Harley's motive weighs in favor of allowing the joinder.

## Timeliness of Harley's Amended Complaint

Sometime in September 2012 Harley obtained the information regarding the London Insurers' potential liability in the fifth layer of insurance. In February 2013, Harley filed its amended Complaint. In *Schur,* the plaintiff's request to amend was

---

[4] Although not addressed by the parties, the pleadings and other papers on file also do not make clear whether or not Stronghold and/or CNA London are corporations or non-corporations. The Amended Complaint, Answer filed by Stronghold and CNA London (ECF No 59), and Amended Disclosure statement of those two entities refer to them as "companies." (ECF No. 61.) Each has "Limited" or "Ltd" in its name.

not made until almost one year after the beginning of discovery. *Id*. at 757.

The six-month interval between the acquisition of the information and the amendment of the Complaint coincided with the parties' settlement efforts. As such, the Court does not find the timing of the amendment suspect and it weighs in favor of joinder.

### Injury to Harley if Joinder Is Not Allowed

If joinder is not allowed Harley will need to litigate two separate lawsuits involving the insurance issues pertaining to past and future asbestos claims against it. This will likely increase Harley's litigation costs in these matters.

### Other Equitable Considerations

The Court is to consider other equitable concerns. While Travelers has a strong interest in maintaining a federal forum, none of the other Defendants take any position regarding Harley's remand motion. Harley would likely be prejudiced if it is not allowed to include all the insurers who may be liable for the past and future asbestos claims against it. Thus, Harley is reasonable in asserting that, if any defendant named in its Amended Complaint is not joined in this action, it will file a separate action for relief against the defendant(s) in another court.

Travelers' singular interest in the federal forum does not outweigh the prejudice to Harley of having to litigate similar issues in two courts, if any of the London Insurers are excluded from this action. The duplicative efforts would be wasteful and could lead to contradictory results. Upon balancing of the relevant

factors, the Court concludes that it is appropriate to remand this action to state court. Moreover, as noted the allegations regarding the citizenship of all of the Defendants are insufficient to establish diversity jurisdiction. In light of the foregoing, the Court need not address the amount in controversy issue.

NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:

Harley's motion to remand for lack of subject matter jurisdiction (ECF No. 63) is **GRANTED**;

This action is **REMANDED** to the Milwaukee County Circuit Court; and,

The Clerk of Court is **DIRECTED TO SEND** a certified copy of this Decision and Order to the Clerk of Court for Milwaukee County Circuit Court in Milwaukee, Wisconsin.

Dated at Milwaukee, Wisconsin, this 3rd day of April, 2014.

BY THE COURT:

HON. RUDOLPH T. RANDA
U.S. District Judge